UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ROSS SHAPIRO and<br>MICHAEL GRAMINS,<br><br>               Defendants. | S3 15-cr-00155 (RNC)<br><br>January 6, 2020 |

**MEMORANDUM OF LAW IN RESPONSE TO THE GOVERNMENT'S
SUPPLEMENTAL OPPOSITION TO GRAMINS' MOTION FOR
RECONSIDERATION OF THE COURT'S DENIAL OF HIS MOTION FOR
A JUDGMENT OF ACQUITTAL PURSUANT TO FED. R. CRIM. P. 29**

 

Mukasey Frenchman & Sklaroff LLP
2 Grand Central Tower
140 E. 45th St., 17th Floor
New York, New York
Tel (212) 466-6400

*Attorneys for Michael Gramins*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................1

BACKGROUND ....................................................2

ARGUMENT ....................................................6

I. The Second Circuit's Opinion in *Gramins* Has No Bearing on Gramins' Motion for Reconsideration of this Court's Rule 29 Decision....................................................6

II. This Court Should Enter a Judgment of Acquittal Because Gramins' Due Process Rights Were Violated ....................................................9

CONCLUSION....................................................13

## TABLE OF AUTHORITIES

**Cases**

*United States v. Carpenter*,
 791 F.2d 1024, 1034 (2d Cir. 1986), aff'd, 484 U.S. 19 (1987)......................................... 10

*United States v. Gramins*,
 939 F.3d 429 (2d Cir. 2019)..................................................................................... passim

*United States v. Johnson*,
 No. 18-1503-cr, 2019 WL 6834021 (2d Cir. Dec. 16, 2019) ................................ 5, 11, 12

*United States v. Litvak*,
 889 F.3d 56 (2d Cir. 2018).......................................................................................... 3, 7

*United States v. Litvak*,
 808 F.3d 160 (2d Cir. 2015)............................................................................................ 9

*United States v. Shapiro*,
 No. 3:15-cr-155, 2018 WL 2694440 (D. Conn. June 5, 2018)..................................... 4, 10

*United States v. Washington*,
 184 F.3d 653, 657 (7th Cir. 1999) .................................................................................. 6

Defendant Michael Gramins, by his counsel, respectfully submits this Memorandum of Law in response to the Government's Supplemental Opposition to Gramins' Motion for Reconsideration of the Court's Order denying his Motion for a Judgment of Acquittal.

## PRELIMINARY STATEMENT

In *United States v. Gramins*, 939 F.3d 429 (2d Cir. 2019), the United States Court of Appeals for the Second Circuit ruled on one discreet issue – whether this Court abused its discretion in granting Gramins' motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. That Second Circuit decision has no impact on the questions that remain before this Court, including whether, as required by the Second Circuit in *Litvak II*, the government introduced sufficient evidence at trial to establish a "nexus" between the testimony of its counterparty witnesses and reasonable investors in the RMBS market, and whether this Court should reconsider its ruling that Gramins' due process rights were not violated by the charges brought in this case.

The government failed to establish any such "nexus" in this case. It is abundantly clear from the evidence introduced at trial – which was not, by any means, fully scrutinized in the *Gramins* opinion given the limited issue before the Second Circuit – that reasonable investors in the RMBS market would not have found any of Gramins' misrepresentations concerning Nomura's acquisition costs to be material. As set forth in detail in Gramins' motion for reconsideration, testimony from both the government's counterparty witnesses and Nomura witnesses made clear that dishonesty was rampant in the RMBS market and that counterparties not only knew to be cautious of statements made by broker-dealers during negotiations, but engaged in their own gamesmanship to maximize profits. Thus, any outlier testimony from counterparties concerning the "trust" they placed in Gramins or the "importance" of truthful information about

Nomura's internal profits had no nexus to the mainstream thinking of reasonable investors in the RMBS market.

The due process concerns associated with this case are also stronger than ever; it is evident that the conduct at issue in this case should have never been charged as a crime.  Fifty-seven criminal counts have been tried against five different RMBS traders from three different banks, and only a single conviction remains – the one of Gramins.  Many RMBS traders who engaged in the same exact conduct were charged only in civil cases.   Others were not charged at all.  And the Securities and Exchange Commission recently dismissed its parallel RMBS case against Tyler Peters after it failed to generate evidence to support the charges.  Peters, who was acquitted at the criminal trial, is now free from any criminal or regulatory penalties.  The government's capricious, inconsistent and questionable approach to this market is proof positive that Gramins had no conceivable notice that engaging in commonplace negotiating tactics could result in criminal charges.

Accordingly, this Court should grant Gramins' motion for reconsideration of this Court's order denying his motion for a judgment of acquittal.

**BACKGROUND**

Indictment S3 15 Cr. 155 (RNC) was returned on March 6, 2017, in nine counts against Michael Gramins, Ross Shapiro, and Tyler Peters.

On June 15, 2017, the jury returned a guilty verdict as to Gramins on Count One (conspiracy) and acquitted him on Counts Two, Four, Five, Six, Seven, and Eight. The jury was unable to reach a verdict as to Gramins on Counts Three (securities fraud) and Nine (wire fraud). The jury acquitted Tyler Peters on all nine counts, and acquitted Ross Shapiro on all counts save for Count One, as to which the jury was unable to reach a verdict.

On June 27, 2017, Gramins filed a motion for a judgment of acquittal on Counts One, Three, and Nine, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, and a motion for a new trial on Count One pursuant to Rule 33.[1]  ECF No. 440.  With respect to his motion for a judgment of acquittal, Gramins argued that i) he should be acquitted on Count One because the government failed to prove that he entered into an agreement to violate the law and failed to establish the existence of any co-conspirator, ii) he should be acquitted on Count Three because no rational juror could conclude that he made any material misstatements in connection with the relevant trade, iii) he should be acquitted on Count Nine because no rational juror could conclude that he acted with intent to harm or that the "trade ticket" at issue was sent in furtherance of a fraudulent scheme, and iv) he should be acquitted on all counts under the Due Process Clause of the Fifth Amendment because he lacked fair notice that the conduct underlying his charges was prohibited by law.  With respect to his motion for a new trial, Gramins argued that he was prejudiced by evidence of the *Litvak* indictment and by improper remarks by the government in its rebuttal summation.

On May 3, 2018, in *United States v. Litvak* ("*Litvak II*"), 889 F.3d 56 (2d Cir. 2018), the U.S. Court of Appeals for the Second Circuit, for the second time, vacated the conviction of Jesse Litvak because mistaken testimony from two witnesses concerning their belief that Litvak acted as their "agent" in connection with the purchase and sale of RMBS bonds was improperly admitted and may have led to Litvak's conviction.  In *Litvak II*, the Second Circuit stated:

> To prove materiality, the government relied heavily on the testimony of counterparty traders – purported victims – that they considered appellant's misstatements to be an important factor, among others, in their investment decisions. The district court believed it important that counterparty traders testify to "their own point of view." This approach is permissible in a case like this, but only so long as the testimony about the significance of the content of a defendant's

---

[1] Gramins' Memorandum of Law in support of his motion was filed on August 28, 2017.  ECF No. 476 (the "Post-Trial Motion").

3

> misstatements and each trader's "own point of view" is shown to be within the parameters of the thinking of reasonable investors in the particular market at issue. In other words, there must be evidence of a nexus between a particular trader's viewpoint and that of the mainstream thinking of investors in that market. Materiality cannot be proven by the mistaken beliefs of the worst informed trader in a market.

*Id.* at 65 (internal citation omitted).

In light of *Litvak II*, Gramins filed a Supplemental Memorandum of Law in support of his Rule 33 motion, arguing that he was prejudiced by testimony from government witness Joel Wollman (who was one of the two witnesses whose testimony was improperly admitted in *Litvak II*) that implied that Wollman believed that Gramins was acting as his agent during trades.  ECF No. 496.

On June 5, 2018, this Court entered an order denying Gramins' motion for a judgment of acquittal, but granting his motion for a new trial on Count One.  *See United States v. Shapiro*, No. 3:15-cr-155, 2018 WL 2694440 (D. Conn. June 5, 2018) (the "Post-Trial Order").  In denying the motion for a judgment of acquittal, the Court held, among other things, that i) the government presented sufficient evidence to establish materiality because a rational trier of fact could find that the "point of view" of the government's witnesses was "within the parameters of the thinking of reasonable investors" in the RMBS market, and ii) although "this case raises due process concerns with regard to both fair notice and discriminatory enforcement," Gramins' due process rights were not violated.  *Id.* at *1, 3.  In granting the motion for a new trial, the Court held that although Wollman did not expressly testify that he viewed Gramins as his "agent," Wollman's testimony "strongly implied that that is how he viewed the role of broker-dealers in the RMBS market when brokering trades."  *Id.* at *5.

At a status conference on June 7, 2018, the Court indicated that it would accept motions to reconsider its decision denying the defendants' motions for judgments of acquittal, and

questioned whether, in light of *Litvak II*, the government presented sufficient evidence at trial to establish a "nexus" between the testimony of its counterparty witnesses and the mainstream thinking of reasonable investors in the RMBS market:

> [*Litvak* II] tells us that lying to take other people's money is not necessarily criminal. It tells us that this is a very unusual animal, the RMBS market, and the views of traders in that market may not themselves account for a lot. It may be that expert testimony is necessary to enable the jury to reach a reasoned decision. . . . What evidence would the government offer to establish the nexus that is referred to in *Litvak II*, that is the nexus between the subjective opinion of, let's say, Mr. Wollman, and the mainstream thinking within the market? It can't just be Mr. Wollman's opinion, I don't think. That might be true in a different market, but I think the Court of Appeals takes pains to tell us that this is a very unusual animal and you have to proceed with care.

Status Conference of June 7, 2018, Tr. 28:6-24 (ECF No. 511). Gramins filed a motion for reconsideration on June 27, 2018 (the "MFR"), in which he explained why the government failed to establish the "nexus" required by *Litvak II*.[2] ECF No. 520.

On July 5, 2018, the government filed a notice of appeal from the Post-Trial Order's grant of Gramins' motion for a new trial. ECF No. 525. The government's appeal was fully briefed in the Second Circuit in October 2018 and argument was heard on November 27, 2018. On September 20, 2019, the Second Circuit reversed the Post-Trial Order and remanded to this Court with instructions to reinstate Gramins' conviction. *See United States v. Gramins*, 939 F.3d 429 (2d Cir. 2019).

On December 19, 2019, the government filed a supplemental opposition ("Gov. Br.") to Gramins' MFR, arguing that the motion should be denied in light of the Second Circuit's opinion

---

[2] Gramins also again argued in the MFR that the government did not prove that he entered into an agreement to violate the law or the existence of any co-conspirators, noting that this Court did not address either of these arguments in the Post-Trial Order. MFR at 17.

5

in *Gramins* and in *United States v. Johnson*, No. 18-1503-cr, 2019 WL 6834021 (2d Cir. Dec. 16, 2019).[3]  ECF No. 542.

## ARGUMENT

I. **The Second Circuit's Opinion in *Gramins* Has No Bearing on Gramins' Motion for Reconsideration of this Court's Rule 29 Decision**

The government argues that "[i]n *Gramins*, the Second Circuit resolved the principal issue remaining before this Court in reconsideration of the defendants' Rule 29 motions" because the Second Circuit stated that "a rational jury could have found, on the basis of counterparty testimony that the defendants' misrepresentations were important to those counterparties' investment decisions, that those misrepresentations were material." Gov. Br. at 1-2 (citing *Gramins*, 939 F.3d at 446-47). The government is wrong.

The sole issue on appeal in *Gramins* was whether this Court abused its discretion in granting Gramins' motion for a new trial under Rule 33. Thus, while the Second Circuit stated in passing that this Court "properly applied our holdings in *Litvak I* and *II* in denying Gramins's motion for judgment of acquittal," *see Gramins*, 939 F.3d at 447, it did not analyze the argument raised in Gramins' MFR concerning the government's failure to establish a "nexus" between the testimony of its counterparty witnesses and reasonable investors in the RMBS market. That

---

[3] While Gramins has been fighting his conviction, Peters and Shapiro have resolved the parallel case brought against all three defendants by the SEC. In October 2018, Shapiro and the SEC entered into a settlement agreement under which Shapiro agreed to pay a fine of $200,000 and accept a bar from associating with any brokers, dealers or investment advisors, with the right to reapply for reentry after a period of two years, and the SEC agreed to dismiss the case. *See SEC v. Shapiro*, No. 15-cv-7045 (S.D.N.Y) (ECF No. 138); *see also* SEC Order dated Oct. 10, 2018, *available at* https://www.sec.gov/litigation/admin/2018/34-84390.pdf. Additionally, in November 2019, after the parties had completed fact discovery, including the depositions of "victim" counterparties, the SEC dismissed its case against Peters in its entirety without requiring that Peters pay anything or agree to any bar. *See id.* (ECF Nos. 172-73).

Separately, in July 2019, Nomura entered into a settlement agreement with the SEC based on the conduct at issue in this case (as well as identical conduct that occurred on Nomura's commercial mortgage-backed securities desk). *See* SEC Press Release, "Nomura to Pay Misled Bond Customers $25 Million to Settle SEC Charges" (July 15, 2019), *available at* https://www.sec.gov/news/press-release/2019-131.

6

question was not before the Second Circuit. *See id.* ("The question before us today is . . . not whether the government introduced evidence sufficient to support the jury's conviction of Gramins on its theory of materiality, but whether the presentation of that evidence at trial gave the government an unfair advantage in pressing that theory to the jury."); *see also United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999) ("A plethora of courts have recognized a fundamental distinction in the standards governing" Rule 29 and Rule 33).

As explained in the MFR, the government failed to establish such a nexus at trial. *See Litvak II*, 889 F.3d at 65 (it is the government's burden to set forth "evidence of a nexus between a particular trader's viewpoint and that of the mainstream thinking of investors in that market"). For instance:

- Joel Wollman clearly had an incorrect view of his relationship with broker-dealers in the RMBS market in testifying that Gramins was merely "brokering" and "facilitating" trades. *See, e.g.*, Tr. 2113:19-2114:9; 2181:6-21. Based on this incorrect belief, Wollman testified that it would have been "important" to him to know about Gramins' acquisition costs. *See, e.g.*, Tr. 2179:15-19. Wollman also conceded that he was "inherently skeptical" during his negotiations with broker-dealers. Tr. 2220:4-7;[4]

- Zach Harrison knew that lying was rampant in the RMBS market, *see, e.g.* DX 544 at 24 ("someone lying to my face is like [an] hourly occurrence"), but testified that he thought that the Nomura traders treated him differently because he had personal relationships with them. *See* Tr. 706:10-707:4; 709:19-710:4. However, Harrison also admitted that he consummated a transaction with Nomura even though he believed that a Nomura trader may have been lying to him during negotiations. Tr. 1168:1-13. Harrison's testimony was further weakened by the revelation that he had engaged in a plethora of his own dishonest conduct in connection with RMBS trades, including proving "bs" information to Peters. Tr. 1291:15-20;[5]

---

[4] In *Litvak II*, the Second Circuit found that Wollman's point of view testimony was "severely weakened" by his admission "that he viewed negotiations with broker-dealers with skepticism" and by evidence that showed that Wollman concealed relevant pricing information from Litvak. *See* 889 F.3d at 71.

[5] This case is further twisted by the fact that Harrison, a key witness against Gramins at trial, has since entered into a settlement with the SEC as a result of conduct that was the subject of his cross-examination at trial (namely, "cross-trading" or "parking bonds"). This settlement required Harrison to pay a $50,000 fine and prohibited him from associating with any brokers, dealers or investment advisors for a period of nine months. *See In the Matter of Putnam Investment Management, LLC and Zachary Harrison*, SEC Admin. No. 3-18844, Sept. 27, 2018 Order, *available at*

7

- Aadil Abbas testified that accurate information about Nomura's acquisition cost would have been important to him because he would have been able to buy the bonds at a cheaper price. *See* Tr. 1510:3-13 ("Yeah, it's important because I could have bought it at 78 and 22, which is cheaper than what I eventually ended up paying."). However, Abbas conceded that Nomura might not have been willing to sell the bonds at any price other than the one to which Abbas agreed. *See* Tr. 1523:14-20; 1657:14-22. Abbas also testified that there was a "nonzero probability [he] could have still bought [the bonds]" if he had known Nomura's true acquisition cost. Tr. 1524:8-1525:3;[6]

- There was an abundance of evidence at trial demonstrating that broker-dealers throughout the RMBS market were untruthful about their acquisition costs, *see, e.g.*, Tr. 341:20-24 (witness testifying that "every trader on Wall Street" used deceptive negotiating tactics), including the fact that two of the Nomura witnesses continued to engage in such conduct after leaving Nomura to work for different broker-dealers. *See* Tr. 328:5-7, Tr. 2011:23-2013:5;

- It was clear from the testimony of both the counterparty witnesses and Nomura trader witnesses that buy-side counterparties regularly engaged in deceptive negotiating tactics. *See, e.g.*, Tr. 357:22-24; 1830:20-1831:25 (Nomura witnesses testifying that counterparties "lied all day" to dealers and would disseminate false pricing information).

The Second Circuit did not conduct an in-depth review of the trial testimony in this case given that it had one discrete task before it – determining whether this Court abused its discretion and misapplied *Litvak II* in granting Gramins' motion for a new trial under Rule 33. And, while the Second Circuit did review certain portions of Wollman's testimony, its analysis was likewise tailored to the narrow issue before the court on appeal. *See, e.g.*, *Gramins*, 939 F.3d at 454 ("In light of the foregoing analysis, we conclude that the district court's decision to grant Gramins a new trial was based on an overbroad reading of *Litvak II*. . . ."). Indeed, the Second Circuit did not analyze Wollman's testimony holistically in connection with the testimony of the government's other counterparty witnesses or with the testimony of the Nomura trader witnesses.

---

https://www.sec.gov/litigation/admin/2018/ia-5050.pdf. Tellingly, the government tried to prevent defense counsel from cross-examining Harrison on this topic. *See* ECF No. 329 at 26-28; ECF No. 352.

[6] The MFR also pointed out that the only counterparty who arguably provided testimony that had a nexus to the mainstream market – Eric Marks – only testified about trades involving Peters, who was acquitted of all counts. *See* MFR at 10.

8

Thus, while the Second Circuit reaffirmed in *Gramins* that "[point of view] testimony from a broker-dealer's counterparties *can* constitute sufficient evidence of materiality to support a conviction for securities fraud," *see* 939 F.3d at 446 (emphasis added), the point of view testimony introduced at the trial in this case was insufficient.

Additionally, the Second Circuit's *Gramins* decision obviously did not speak to the arguments in Gramins' Post-Trial Motion concerning the government's failure to present sufficient evidence of a conspiracy. These arguments, which were not addressed in the Court's Post-Trial Order, provide yet another basis upon which this Court should grant Gramins' MFR.

## II. This Court Should Enter a Judgment of Acquittal Because Gramins' Due Process Rights Were Violated

The due process and selective prosecution problems with this case – which have been regularly raised by this Court, including in the Post-Trial Order – have only increased since Gramins filed the MFR in June 2018.[7] The prosecution of these cases was misguided from the get-go. Of the fifty-seven total counts that have been tried against five different traders from three different banks, only Gramins' conviction remains.[8]

Even Gramins and Peters – who worked on the same desk, at the same bank, under the same supervisors, at the same time – are now in entirely different positions. While Gramins is facing the crippling burden of a felony conviction attached to his name for life (along with any punishment that might be imposed by this Court at sentencing), Peters was not only acquitted of

---

[7] In his MFR, Gramins incorporated by reference the due process arguments made in Shapiro's motion for reconsideration. *See* MFR at 17 n. 9.

[8] *See United States v. Litvak*, 808 F.3d 160 (2d Cir. 2015) (reversing or vacating fifteen counts); *United States v. Litvak*, No. 13 Cr. 19 (JCH) (D. Conn. Jan. 27, 2017), ECF No. 510 (acquittal at trial on nine counts); *United States v. Shapiro*, No. 15 Cr. 155 (RNC) (D. Conn. Jun 15, 2017), ECF No. 431 (acquittal at trial or no verdict on twenty-six counts); *Litvak II*, 889 F.3d 59 (vacating one count); (vacating one count); *United States v. Demos*, No. 16 Cr. 220 (AWT) (D. Conn. May 3, 2018), ECF No. 344 (acquittal at trial on five counts).

all of the charges in this case, but is also now free from any potential penalty from the SEC.[9] That is the fair and just outcome for Gramins, as it was abundantly clear at trial that no one on Nomura's RMBS desk thought that the conduct at issue was illegal before Litvak was indicted and that counterparties were undoubtedly cautious of unverified, volunteered information from dealers about their acquisition costs.[10] Indeed, it is telling that the SEC dismissed its case against Peters shortly after the depositions of the "victim" counterparties failed to yield proof to support the charges.

In its Post-Trial Order, while recognizing the due process concerns associated with this case, this Court concluded that "[u]nder existing precedent, even if the defendants did not realize their conduct was unlawful until the *Litvak* indictment, their right to due process has not been violated if 'they clearly treaded closely enough along proscribed lines [for a jury] to find that they had adequate notice of the illegality of their acts.'" Post-Trial Order at *3 (citing *United States v. Carpenter*, 791 F.2d 1024, 1034 (2d Cir. 1986), *aff'd*, 484 U.S. 19 (1987)). But Gramins did not "tread[] closely enough" to any proscribed lines, and the government's theory of prosecution has proven to be outrageously flawed. It is now clear from the combination of the criminal charges brought in the District of Connecticut, miscellaneous civil proceedings brought by other regulatory agencies, and the evidence introduced at Gramins' trial, that the conduct at issue in this case was occurring at virtually every major broker-dealer in the RMBS market.[11] It would be fantastical to

---

[9] Likewise, neither Jesse Litvak nor David Demos face any SEC penalty. The SEC did not bring a case against Demos, and the SEC dismissed its case against Litvak after the U.S. Attorney's office declined to retry Litvak for a third time. *See SEC v. Litvak*, No. 3:13-CV-00132 (D. Conn.) (ECF No. 58).

[10] For the reasons set forth in his Post-Trial Motion, Gramins maintains that his only "post-*Litvak*" trade introduced at trial was carefully conducted in accordance with the guidance that Nomura's compliance department provided to traders after Litvak was indicted. *See* Post-Trial Motion at 13-15, 26-28.

[11] In addition to the criminal charges brought in this District against traders from Nomura (*U.S. v. Shapiro*), Jefferies (*U.S. v. Litvak*), Cantor Fitzgerald (*U.S. v. Demos*) and RBS (*U.S. v. Katke* and *U.S. v. Siegel*), various civil/regulatory proceedings are known to have been brought against the following banks and/or individual traders from those banks:

suggest that this conduct was so widespread because dozens of RMBS traders across these banks all knowingly decided to break the law. Instead, the only rational explanation for the prevalence of this conduct is that no one believed that engaging in commonplace negotiating tactics was criminal. Certainly Gramins did not.

Nor does the Second Circuit's decision in *Johnson* have any impact here. In *Johnson*, Cairn Energy ("Cairn") entered into an agreement with HSBC whereby if Cairn provided HSBC with two-hours' notice that it wanted to convert a large volume of U.S. dollars to British pounds, "HSBC would be obligated to perform the transaction at a price equivalent to a publicly available fix rate" (known as a "Fixing Transaction"). 2019 WL 6834021, at *2. In connection with this agreement, then-HSBC trader Johnson assured Cairn that HSBC would not "ramp the fix" – *i.e.*, "trade currency before the fix in such a way as to artificially increase, or 'ramp,' the currency's price at the fix." *Id.*

However, on the day that Cairn informed HSBC that it wanted to go forward with a Fixing Transaction, Johnson instructed other HBSC traders to aggressively purchase pounds in order to "ramp the fix." *Id.* Additionally, after the Fixing Transaction was completed, Johnson told HSBC that another bank's activities were responsible for the dramatic price movement in the market. *Id.* at *3.

---

Morgan Stanley, Barclays, Goldman Sachs, BedRok Securities, Deutsche Bank and Merrill Lynch. *See* Post-Trial Motion at 56 n. 27 (listing proceedings against traders from Morgan Stanley, Barclays, Godman Sachs and BedRok Securities); *see also In the Matter of Merrill Lynch, Pierce, Fenner & Smith Inc.*, SEC Admin No. 3-18538, June 12, 2018 Order, available at https://www.sec.gov/litigation/admin/2018/34-83408.pdf; *In the Matter of Deutsche Bank Securities Inc. and Benjamin Solomon*, SEC Admin No. 3-18367, Feb. 12, 2018 Order, available at https://www.sec.gov/litigation/admin/2018/34-82686.pdf.

Additionally, the evidence at trial revealed that such conduct was occurring at Auriga USA, LLC (which is where Frank Dinucci worked after leaving Nomura) and Credit Suisse. *See* MFR at 13-14. Moreover, discovery provided by the government to defense counsel demonstrates that RMBS traders at several other major broker-dealers had engaged in this conduct but did not get criminally or civilly charged.

Johnson was ultimately charged with and convicted of conspiracy and wire fraud, and he argued on appeal, among other things, that his due process rights had been violated because he lacked fair notice that his conduct was illegal. *Id.* at *3-6. Specifically, Johnson claimed that it was acceptable in the industry for banks to trade ahead of a fix, which was commonly known as "frontrunning." *Id.* at *6. The Second Circuit rejected this argument, stating:

> Johnson was not convicted of frontrunning. He was convicted of making material misrepresentations to Cairn about *how* HSBC would trade ahead of the fix and the price would be determined. As we explained above, a reasonable jury could have found that these misrepresentations affected Cairn's decisionmaking and deprived it of the right to control its assets.

*Id.*

In other words, Johnson's due process argument was rejected because the conduct that he claimed was acceptable in the industry was different from the conduct underlying his conviction. Indeed, in light of this distinction, the Second Circuit found that it "need not express an opinion on the law relating to frontrunning" at the time that Johnson engaged in the charged conduct. *Id.* In contrast, in this case, Gramins was indicted for the exact conduct that occurred regularly throughout the RMBS industry and that no one thought was illegal. Thus, the Second Circuit's decision in *Johnson* has no effect on this Court's decision here.[12]

This Court should therefore enter a judgment of acquittal on Counts One, Three and Nine because the prosecution of these charges violated Gramins' due process rights.

---

[12] The Second Circuit also rejected Johnson's argument that "the Government is unable to explain when a fixing transaction becomes criminal," concluding that: "[T]he standard is clear: A defendant who executes a fixing transaction engages in criminal fraud if he intentionally misrepresents to the victim how he will trade ahead of the fix, thereby deceiving the victim as to how the price of the transaction will be determined." *Id.* In this case, no such "clear" standard existed. Nor can there be any dispute that Nomura executed trades by purchasing bonds from one counterparty at an "all-in" price in one transaction and selling them to another counterparty at an "all-in" price in a completely different transaction. *See, e.g.*, DX 1101, 1122. Thus, Gramins did not deceive any counterparties "as to how the price" of RMBS bonds "[would] be determined." *See Johnson*, 2019 WL 6834021, at *6.

## CONCLUSION

For the reasons set forth above, as well as those previously set forth in Gramins' prior briefing, the Court should grant Gramins' Motion for Reconsideration of the Court's Ruling and Order denying his Motion for a Judgment of Acquittal.

Respectfully submitted,

Mukasey Frenchman & Sklaroff LLP

By: /s/ Marc L. Mukasey
Marc L. Mukasey (CT29885)
Jeffrey B. Sklaroff (PHV08423)
Robert S. Frenchman (CT30437)
2 Grand Central Tower
140 East 45th Street, 17th Floor
New York, NY 10017
Tel (212) 466-6400

*Attorneys for Michael Gramins*

## CERTIFICATION OF SERVICE

I hereby certify that on January 6, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated:   New York, New York
         January 6, 2020

      /s/ Marc L. Mukasey
Marc L. Mukasey
Mukasey Frenchman & Sklaroff LLP
2 Grand Central Tower
140 E. 45th St., 17th Floor
New York, New York
Tel (212) 466-6400