# EXHIBIT A

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

LLOYD K. GARRISON    (1946-1991)
RANDOLPH E. PAUL     (1946-1956)
SIMON H. RIFKIND     (1950-1995)
LOUIS S. WEISS       (1927-1950)
JOHN F. WHARTON      (1927-1977)

WRITER'S DIRECT DIAL NUMBER

(212) 373-3311

WRITER'S DIRECT FACSIMILE

(212) 492-0311

WRITER'S DIRECT E-MAIL ADDRESS

rfinzi@paulweiss.com

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
JACOB A. ADLERSTEIN
JUSTIN ANDERSON
ALLAN J. ARFFA
JONATHAN H. ASHTOR
ROBERT A. ATKINS
DAVID J. BALL
SCOTT A. BARSHAY
PAUL M. BASTA
J. STEVEN BAUGHMAN
LYNN B. BAYARD
CRAIG A. BENSON
MARK S. BERGMAN
DAVID M. BERNICK
JOSEPH J. BIAL
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
ROBERT BRITTON
DAVID W. BROWN
SUSANNA M. BUERGEL
JESSICA S. CAREY
DAVID CARMONA
GEOFFREY R. CHEPIGA
ELLEN N. CHING
WILLIAM A. CLAREMAN
LEWIS R. CLAYTON
YAHONNES CLEARY
RACHAEL G. COFFEY
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
THOMAS V. DE LA BASTIDE III
MEREDITH DEARBORN*
ARIEL J. DECKELBAUM
KAREN L. DUNN
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
HARRIS FISCHMAN
ANDREW J. FOLEY
ANDREW J. FORMAN*
HARRIS B. FREIDUS
CHRISTOPHER D. FREY
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
MATTHEW B. GOLDSTEIN
ROBERTO J. GONZALEZ*
CATHERINE L. GOODALL
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRIAN S. GRIEVE
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
BRIAN S. HERMANN
MICHELE HIRSHMAN
ROBERT E. HOLO
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
WILLIAM A. ISAACSON*
JAREN JANGHORBANI
BRIAN M. JANSON
JEH C. JOHNSON
MEREDITH J. KANE
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY

BRIAN KIM
KYLE J. KIMPLER
ALEXIA D. KORBERG
ALAN W. KORNBERG
DANIEL J. KRAMER
CAITH KUSHNER
DAVID K. LAKHDHIR
JOHN E. LANGE
GREGORY F. LAUFER
BRIAN C. LAVIN
XIAOYU GREG LIU
LORETTA E. LYNCH
JEFFREY D. MARELL
MARCO V. MASOTTI
DAVID W. MAYO
ELIZABETH R. McCOLM
JEAN M. McLOUGHLIN
ALVARO MEMBRILLERA
MARK F. MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B. MICHAEL
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
LINDSAY B. PARKS
ANDREW M. PARLEN
CHARLES J. PESANT
JESSICA E. PHILLIPS*
VALERIE E. RADWANER
JEFFREY J. RECHER
CARL L. REISNER
LORIN L. REISNER
JEANNIE S. RHEE*
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JUSTIN ROSENBERG
JACQUELINE P. RUBIN
CHARLES F. "RICK" RULE*
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
BRIAN SCRIVANI
KYLE T. SEIFRIED
KANNON K. SHANMUGAM*
AUDRA J. SOLOWAY
SCOTT M. SONTAG
SARAH STASNY
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
BRETTE TANNENBAUM
RICHARD C. TARLOWE
MONICA K. THURMOND
DANIEL J. TOAL
LAURA C. TURANO
CONRAD VAN LOGGERENBERG
LIZA M. VELAZQUEZ
MICHAEL VOGEL
RAMY J. WAHBEH
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
LINDSEY L. WIERSMA
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
AUSTIN WITT
MARK B. WLAZLO
JULIA TARVER MASON WOOD
JENNIFER H. WU
BETTY YAP*
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
TAURIE M. ZEITZER
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR
*ADMITTED TO THE CALIFORNIA BAR

November 10, 2020

**BY HAND**

Honorable Robert N. Chatigny
United States District Judge
  for the District of Connecticut
Abraham Ribicoff Federal Building
United States Courthouse
450 Main Street -- Room 228
Hartford, CT  06103

<strong>Re:  Michael Gramins</strong>

Dear Judge Chatigny:

     I write in connection with Michael Gramins' sentencing, which I understand is scheduled for December 17th.  Specifically, and in the hopes that what I have to say is useful to Your Honor in fashioning an appropriate sentence, I write to inform the Court of my interactions with Michael over the last several years and the impression he has made on me.

     I note at the outset that I am a former federal prosecutor and a practicing criminal defense lawyer.  While I have read and reviewed many sentencing letters in my

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Robert N. Chatigny                                                          2

25 years as a law clerk, a prosecutor, and now as a member of the defense bar, I have never had occasion to write one before now.

   I have known Mike for three years and in several different capacities. As a practicing criminal defense lawyer active in the white collar and regulatory space, I followed Mike's case closely even before meeting him. Like many in the defense bar, I was surprised that the government brought the case at all. Without condoning the sales practices that existed in the industry at the time, I am certain that they were in fact commonly used industry practice. Having provided many clients briefings and updates about Michael's case as it wound its way through the courts, I can say with confidence that many RMBS traders were shocked to learn that the conduct they had engaged in for years was suddenly being treated as criminal. As a result, I firmly believe that the industry was not on notice of the government's position, and that whatever the traders thought of their conduct, they did not in a million years believe they were committing crimes.

   Although I had been following Mike's case, I only met him personally in 2017, when he started working at Bohrer PLLC. The Bohrer firm and my firm were (and continue to be) co-counsel in a criminal case in the District of New Jersey, and over time I had occasion to work closely with Mike on several different projects. Over time we became friendly and eventually became friends, such that I have gotten to know him in both professional and personal settings.

   Although we often discuss his case, we just as often discuss other aspects of life, like family, work, sports and politics. Even when I can tell he is worried about his case (and by extension his family and his work) he is inevitably polite, courteous and interested. I have never seen him blame others for his predicament or heard him wonder why the case—which could have been brought against virtually anyone in the industry—was brought against him. Despite having lost so much, he is never bitter, but rather always looking for ways learn new things and gain new insights.

   In the spring of 2019, while preparing for a criminal trial that involved RMBS, I found myself increasingly in need of an "expert" who could help me decipher the world of mortgage back securities. I turned to Michael for consultations on different products, on terminology, and on trading strategies and market events. Not surprisingly, he displayed an incredibly deep knowledge of the subject matter and a remarkable ability to explain difficult concepts in simple and easy to understand terms.

   It is in this context that I saw the best of Mike's kindness and empathy. My client in that case, an immigrant who had no prior experience with the criminal justice system, was understandably terrified about the entire process. Mike patiently walked him through what to expect from the client's point of view, which I know can be very different from the perspective lawyers bring to cases. Michael did not know the details of my client's case, but without judgment of what my client may (or may not) have done, and with no motivation other than the desire to help a stranger in distress, Michael showed him tremendous sympathy and respect.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Robert N. Chatigny                                                                    3

This feature of Mike's personality—a selfless interest in the welfare of others—has been a constant in my dealings with him.  This feature is all the more remarkable given how difficult the last several years have been for him.

Based on the foregoing, and whether or not one believes his conduct amounted to a crime, I can say with absolute conviction that sending Michael to prison would serve no legitimate law enforcement interest.  To the extent Mike himself needs to be deterred from misconduct (and I do not believe he does), he has clearly been punished enough by the process itself.  And to the extent the industry as a whole needs deterrence, Michael's case, rightly or wrongly, has already put the industry on notice.

In sum, and at the risk of repeating myself, I have gotten to know Michael in several different situations over the last several years.  In every context, and in every way, he has shown himself to be decent and hardworking person who cares about his family, his colleagues and his community.  Although there may be legitimate disagreement about whether Michael's conduct amounted to a crime, I do not believe that there is any legitimate argument that he needs to be sent to prison or otherwise punished beyond what he has already been through.

In hope this letter has been helpful to the Court, and am available to answer any questions Your Honor may have for me.

Respectfully,

Roberto Finzi

Ex. A-28

*Robert H. Bogucki, Jr.*

New York

Hon. Robert N. Chatigny
United States District Court
District of Connecticut
Abraham Ribicoff Federal Building
450 Main Street - Room 228
Hartford, Connecticut 06103

November 12, 2020

Dear Judge Chatigny,

I am writing in support of my friend, Michael Gramins, whom you are scheduled to sentence on December 17th, 2020. This is a difficult letter to write. I say this because, while everyone in Mike's life is, no doubt, *sympathizing* with what Mike is going through, I can actually *empathize* with this difficult and challenging situation. With all due respect, Your Honor, I speak on Mike's behalf from what I feel is a truly unique vantage point and one that I humbly urge you to seriously consider.

Like Mike, I was charged by the DOJ for something that I, never in a *million* years, would have conceived would one day be construed as a crime. I had my life literally ripped out from under me, watched a former customer of mine testify with revisionist history (using today's standards for something that happened 7 years prior), and spent nearly three years suffering at the very core of my being. Nevertheless, after putting myself through the crucible of self-examination, I refused to succumb to the DOJ's pressure to have me plead guilty, and went to trial before the Honorable Charles R. Breyer in the Northern District of California (NDCA 18-cr-00021/CRB) in February 2019. My trial ended in a Rule 29(a) judgement for full acquittal on all charges before I even had to present a defense.

The purpose of this letter, however, is not to educate you on my legal saga, as it seems you are well aware of it. I am writing to tell you about my friend, Michael Gramins, the friendship that we forged as a result of our similar ordeals and, more importantly, the impact this has had on both of our lives and families.

Ex. A-29

I met Mike through a mutual friend and former colleague who is close to Mike's wife, Natalie. I jumped at the chance to have dinner with Mike when he texted me weeks later. We met at a crowded fish bar in New York City, and Mike gave me a huge bear-hug upon meeting for the very first time. "I am so happy for you, Rob", he said to me. Over the course of that dinner I felt I knew Mike for decades as we could finish one another's sentences and learned that we had virtually identical lives and experiences. Mike and I each have supportive wives, young families, and happen to be proud fathers of sons and daughters. As a result of our first meeting back in early 2019, I feel that I know Mike better than many people I went to college with and have known for over three decades. Mike and I have endured a lot together, and I consider him a very dear friend.

You will hear from many other people about what a kind, gentle, loving and vibrant person Mike is. Despite only knowing him 2 years, I can personally attest to this. His positive energy and attitude about life are infectious. I don't actually know if I, myself, could exhibit the same positive, upbeat and constructive appreciation for humanity if I had been put through this ordeal for as long as Mike has. I like to think that the depth of my character and spirit speaks for itself having survived my situation, but it pales in comparison to Mike's resilience, strength and endurance. His selfless and caring personality is something that I have found in very few people. As a person who is trained as an empirical scientist (earning a degree in Mechanical & Aerospace Engineering at Cornell University), I was taught that, in order to measure what an entire mountain of "stuff" is composed of, one only needs a teaspoonful. My most recent teaspoonful of "stuff" with respect to Mike (I have many others but wish to keep this short), is when he called me two weeks ago to introduce me and a former colleague who he thought would be a great professional contact for me. Two months before being sentenced, and after 5 years of living hell, Mike wants to help *me* with *my* career. So, despite what this conviction may represent to those who wanted to "score their legal shot on goal", may it never stop the world from being a better place with people like Mike actively participating in it. He is a very good man.

Having been run through the system on this "ulcerating" journey (to borrow Your Honor's words), I wish to let you know just how impactful all of this is to a young family; mine was impacted needlessly and Mike's has been affected in the same way for far too long. Having been completely acquitted, I will never lose sight of the fact that I missed years 4 & 6, 5 & 7, and much of 6 & 8 of my son and daughter's lives due to being subjected to this psychological duress. I have since made up for that time as ████ and ████ are now 9 and 11 years old, but I was luckily around them for a substantial period before all of this transpired. I cannot imagine what it has been like for Mike, however, with █ (6) and ████ (3), to not experience any bit of his children's lives without this situation hanging over his head. Think about that. He has not been in his children's lives without this matter gnawing at his life. Their young lives have been consumed by their father embroiled in this extended drama; a prosecution that the *legal* profession casually calls "novel", "intriguing" and "expansive", but one in which people like Mike (and me) have actually had to live their real lives in. Trust me, there is nothing worse than watching your life go on without you being fully in it. Take it from a man who actually lived it; the feelings of despair, confusion, exhaustion and self-criticism are quite

difficult to bear on a daily basis. My wife, a board certified surgeon and physician, was concerned on multiple occasions that I was ███████████████████ at various junctures of this needlessly dragged-out "process".  A behavioral scientist who knows me intimately classified █ ██████████████████████ . Despite all of this, I find myself having a greater respect for the *judicial* system in our country and I know through a multitude of conversations with Mike that he actually feels the same way. Michael Gramins has a lot of life to live and a lot of good to do in it.

So my humble request to Your Honor is simple: Michael Gramins has suffered enough and should not be punished any further. Five years living in uncertainty, fear, shame, and being thrashed about on an emotional roller coaster while trying to keep a young family intact and shield kids from this ordeal has been punishment enough. I had to do it for just under three years, and needlessly so. My children still don't know what I went through. nor should they. In borrowing Judge Breyer's term, the "*overreaching*" prosecutors in my case were, thank goodness, unsuccessful in "*reaching*" my children. I will one day sit my children down and tell them what happened, but for now, what is most important is that their well-being is ensured by having two devoted parents to help them negotiate the abnormal times we are all presently living in today. The last thing Michael Gramins' children and his family need right now is to see him go away after having just relocated to another state (something necessary for the family's well-being) and to not be around when they undoubtedly need him most.

I respectfully ask Your Honor to acknowledge Mike's prolonged period of 5 years of suffering as punishment enough for this lone conviction. Rest assured that whatever message the DOJ wanted to send to society will not be furthered any more than it already has and will only serve to needlessly punish his young children and family, whom they should not be able to "reach". As someone who has every reason to lose faith in our system of justice, but as mentioned earlier has most certainly not, I am counting on you to show that I (and others) should not be shaken of that faith.

Sincerely,

Robert Bogucki



The Jesuit Community at Saint Joseph's University
261 City Avenue, Merion Station, Pennsylvania 19066-1835

Honorable Robert N. Chatigny
United Stated District Court
District of Connecticut
Abraham Ribicoff Federal Building
450 Main Street
Room 228
Hartford, CT 06103

Dear Judge Robert Chatigny,

I am writing this letter on behalf of *Mr. Michael Gramins*.

I think it may be helpful to you if I give you a bit of background about who I am and my relationship to Michael. I am a Roman Catholic priest and a member of the Society of Jesus (Jesuits). As a Jesuit my work has been primarily in higher education where I have served as a Faculty member at three institutions, Associate Dean of Georgetown College, as President at Loyola University New Orleans. I have also served as a Trustee for eight different universities and two Jesuit high schools. My work at Georgetown and in New Orleans is relevant to this letter about Michael.

My academic specialty is medical ethics and health policy and I have published and lectured widely in these areas. Over the years I have taught students at every level: high school, undergraduate, graduate, Law, and Medicine. I taught for eleven years at Georgetown University which is where I first met Michael. After I left Georgetown in 2004, I moved to New Orleans to serve as President of Loyola University New Orleans. My second year as President was 2005 which was the year of Hurricane Katrina.

While at Georgetown I lived as a Faculty resident in a student residence hall which is where I first met Michael whom I later taught as a student in class. Our friendship has continued since we both left Georgetown so I have known him and his family for many years.

My history in New Orleans and Hurricane Katrina is relevant to this letter and Michael. In the years after Katrina Michael visited New Orleans a couple times both for work and as a volunteer to help with the City's recovery. It was on one of these trips that I had the pleasure of meeting Natalie his wife. I recall thinking then that Mike's Jesuit education, at Loyola Academy and Georgetown University, was evident in his care, concern, and in his commitment to service and his concern for others.

**Ex. A-30**

My observations on Michael's character come from a variety of perspectives through which I have known him as a student, a friend, and through my relationship with him and his wife and his family.  I can say, as someone who has known Michael for many years, a former teacher and as a priest, I know how devastating this whole event has been on Michael and his family and the price he has already paid for his mistakes.  I also know the impact this has had on Michael and his family.  I know how Michael has struggled with guilt, fear, and apprehension in the years since this happened.  I also know that his family has suffered a great deal, along with him, through this whole ordeal.  I am not a lawyer and I do not know what the sentencing guidelines call for in Michael's case.  But, as someone who has dealt with people in many ways, I have often said that Original Sin is the most believable of all Christian doctrines.  And Michael is certainly an example of that.  But, I also believe in redemption and forgiveness and, in light of all that he, and his family, have been through in these past years, I think he is also an example of redemption.  While Anglo-American Law does not deal with forgiveness, it does deal with justice and I think, given all that has occurred, Michael has been dealt with justly.


With prayers and best wishes,


Kevin Wm. Wildes, S.J., Ph.D.                    23 October 2020
University Professor

October 23, 2020

The Honorable Robert N. Chatigny
United States District Couirt
District of Connecticut\Abrahm Ribicoff Federal Bulding
450 Main Street - Room 228
Hartford, CT 06103

Dear Judge Chatigny:

My name is Otto Hentz, S.J.  I entered the Society of Jesus in 1955 and was ordained a priest in 1968. I earned my Ph.D. at the University of Chicago and I have been a professor of theology at Georgetown University for 50 years, teaching courses on Jesus Christ,The Church in the ModernWorld, and Systematic Theology.

It is through my roles as a priest and professor that I have gotten to know Michael (Mike) Gramins and the Gramins family.  I first taught Mike's older brother Dan during his time at Georgetown - both in theology and how to play squash (1985-1989).  A decade later his sister Meg arrived at Georgetown. She was my student in my course on Jesus Christ, and during her senior year was part of a group that joined me and another Jesuit weekly for Mass and dinner. Mike took my "Intoduction to Catholic Theology" course during the Spring semester of 2002.  In addition to his studies in the Government Honors program, Mike played club lacrosse, volunteered in the Sursum Corda tutoring program, served on Freshman and Senior Class Committees. He also served as lector at Sunday Mass.

From my interactions with Mike I knew him to be a person of integrity, and one who embraces the Jesuit ideal of "men and wormen for others" through service to others. He was a hard worker who approached hi s studies with mature discipline and graduated from Georgetown with honors.

Through my ongoing friendship with the Gramins family I know the toll this trial has taken on Mike as well as his family over five years.  This has been a humbling experience for Mike. Too, given the impact of his indictment and convction, he faces the additional challenge of navigating the future without the possibility of a return to his work as a trader. .

I pray that you can show mercy in the decision about Mike's sentence, especially given the price his famiy has already paid.

Sincerely yours,

Otto Hentz, S.J.

John McNiff

NYC ███

October 30, 2020

Hon. Robert N. Chatigny
United States District Court – District of Connecticut
Abraham Ribicoff Federal Building
450 Main Street – room 228
Hartford, CT 06103

Dear Judge Chatigny,

I am writing to you with respect to the sentencing of Michael Gramins.  I first met Mike in 2004 when I helped recruit him to join the ABS trading desk at Lehman Brothers.  There were many qualified and talented candidates from that year's analyst class, but in my opinion Mike was the clear perfect fit for our group.  The youngest of seven kids from Chicago, unpretentious, smart, hard working and a good sense of humor.  With a little coaxing and arm-twisting of other members of our group it was agreed that Mike was our top candidate and I was sent in to seal the deal for him to join our group.  Not surprisingly, there were a number of other groups within the firm that also wanted Mike to join their team.  However, after a few pints at a local pub I helped Mike see the light and he agreed to become a part of our trading desk.

Over the years it became clear that Mike was as originally advertised, hard working, and talented with a great disposition.  He never complained about having to go pick up egg sandwiches in the morning or work late on a Friday night marking bonds for month-end marks.  He was always respectful and humble with a "can do" attitude.  I witnessed him over the years build strong relationships within our firm and with our clients.  He treated everyone fairly and with respect, and he was extremely well thought of both inside and outside of the firm.  No task was ever too menial for him.  For instance, when it was the end of year and it was time to collect a holiday tip for the cleaning people we sent Mike around to collect money from people within department.  He did that job with his typical sense of pride in his work and made sure everyone reached into their pockets to contribute else suffer a good-natured teasing by Mike until they did.

My wife and I for almost a decade were on the board of Wellness in the Schools, a organization working to promote healthy eating and fitness in high poverty public schools (www.wellnessintheschools.org).  The yearly fund raising event was always extremely important to the funding of the programs.  Mike was always willing to help whenever we needed support either financially or through participation.  He never missed attending the event and we knew we could always count on Mike to

**Ex. A-32**

not only show up and provided financial support but also encourage other people to get involved and promote the event and organization making the event a true success.

After Lehman Brothers went bankrupt in 2008, I moved on to another firm and eventually to the buy-side as a hedge fund portfolio manager.  I enjoyed getting to interact with Mike as a customer.  By this point Mike was no longer considered a young trader but a respected and talented professional with a reputation of being smart and fare.  I knew I could trust Mike to treat me fairly if we transacted in the markets.  I also valued discussing the markets and getting his insights on investment opportunities.

As a 25+year professional trader/investor I have engaged in tens of thousands of negotiated transactions.  I have never bought or sold a bond at a price I was not comfortable transacting at.  I know that at the end of the day it is my decision and my decision alone whether to transact at a given price.  If I'm not happy with the price I can say no/pass and not transact.

I was upset and worried when I learned Mike was embroiled in a DOJ investigation.  The years of mental stress, and uncertainty would clearly take a large toll on even the strongest of people.  I personally believe Mike and his family have suffered enough, and he has clearly learned from this episode in his life.

I ask you, Judge Chatigny, to show leniency on the behalf of Mike Gramins.

Thank you for your consideration

Sincerely,


John McNiff

Hon. Robert N. Chatigny
United States District Court
District Court of Connecticut
Abraham Ribicoff Federal Building
450 Main Street- Room 228
Hartford, Connecticut 06103


Dear Judge Chatigny

I was a senior salesperson and Managing Director at Lehman Brothers in the Mortgage-Backed Securities Department prior to and during the years that Mike Gramins traded RMBS at Lehman. Having already had 20 years of experience, and witnessing the evolution of the business over that time, it was a pleasure for me to have seen and been a participant in Mike's growth as a trader from 2004 to 2008. Over my years of transacting with institutional clients I have worked with a wide variety of traders who all possessed differing skill sets. The one characteristic that I always valued above all else in my colleagues was a clear understanding of how our business operated and how to establish and maintain long standing relationships with our customers.

Mike Gramins, even as a young trader in training, stood out as a astute student of the business. His strong character, intelligence and maturity allowed him to rise in our ranks at a very appropriate pace and my clients came to know and respect him as a valued counterparty. Much as I and all my other sales and trading partners at Lehman had learned, there is no manual or rule book about how to work on a trading floor. It is a career based on assimilated skills that comes from observation, participation and learning from one's mistakes. As with all of us on the sales/trading side Mike understood that the "buy side" at the institutional level in the RMBS space was (and continues to be) highly sophisticated in terms of product knowledge, ability to obtain market information, and understanding of the process around trading with Wall Street.

It came as a complete shock to me when I first heard about the charges against Mike, based on both my experiences with him and on market participants understanding of how transactions take place in our business. There was nothing in the interactions between my clients and Mike during our time at Lehman that was ever conducted in less than a 100% professional manner.  Institutional clients, in my 36 years of sales experience, enter into trades with their eyes open and aware of all the risks their decisions entail.

Ultimately I can only repeat what I've stated earlier. Mike Gramins conducted himself exceptionally as a client-facing representative when I worked with him. Nothing I have learned from following his case leads me to believe his behavior at Nomura during the time in question was in any way something that would have been out of place or unique to clients trading in our space. I believe that last point is crucial here, and I have several decades of experience through many different kinds of challenging markets to feel confident stating that.


Sincerely,   Steven Mayer


Signed:   Steven Mayer


Ex. A-33

Mark E. Ruddy
1225 15th Street, NW
Washington, DC 20005

Via Email To: kate.olivieri@mfsllp.com

November 20, 2020

Hon. Robert N. Chatigny
United States District Court
District of Connecticut
Abraham Ribicoff Federal Building
450 Main Street - Room 228
Hartford, Connecticut 06103

Re:    Character Letter for Michael Gramins

Dear Judge Chatigny:

I hope this letter finds you well.  As noted above, this letter serves as a character reference on behalf of Michael Gramins (who I will hereafter refer to as "Mike" which is how I have always addressed him).   By way of reference, I am one of Mike's former employers.

I have known Mike and his family for over 25 years.  I have even had the pleasure of having dinner with Mike's family at his childhood home in Deerfield, IL.  They are an endearing group – a large and loving Midwestern family that reminds me of the Cunningham's from *Happy Days* or that would otherwise be illustrated by Normal Rockwell.  As the youngest of 7 children, you could always tell he was the family favorite, and growing up he always lived up to his parents' high standards.

About 20 years ago I started a law practice as a solo corporate attorney in Washington, DC.  Mike's older brother asked that I hire Mike in a part time position while Mike was starting his junior year at Georgetown.  I already had a secretary and the last thing I needed was to make busy work for a college student and shoulder the accompanying costs.  Making me even more cynical is that he was a political science major – "flying high with poli-sci" was the adage that came in mind – what value add could he possibly bring to the table?

The law practice quickly grew to an associate and soon my standalone computer arrangement and "pen and checkbook" format of recordkeeping was unsuitable for the burgeoning practice.  I was left feeling disorganized and overwhelmed.  Mike, however, showed a commitment and ability to the job like no other, working late and even on weekends to help with the cause.   With no prior background and guidance, he networked computers and established a server.  He then installed and implemented an accounting software program and kept the books, including the client trust account.  Not once did we have an issue.

Operating out of a row house with other solo practitioners, Mike was always willing to volunteer his time to help others.  I will never forget one septuagenarian attorney whose technological skills were so limited he dictated letters to his secretary.  Yet, he eagerly purchased the latest in music technology – an Apple IPod.  Leaving the office that evening I saw Mike at this attorney's computer with dozens of the attorney's

**Ex. A-34**

musical CDs.  Mike volunteered to install Apple software and spend several hours that evening with this man getting the Ipod functional and offering a tutorial.  Sometimes good deeds are rewarded – the attorney was a former senior partner at Arnold and Porter and equated and quantified hourly time by his own billable rates.  I believe the cash gift he insisted on giving Mike for his few hours of what was to be a charitable deed was more than I paid Mike in a week.

Mike expressed an interest one summer in staying in Washington, DC and working full time at the firm.  This was a godsend to me because at the time I was wondering how we would manage the summer without Mike!  An issue for Mike, however, was affordable housing.  I inquired of my wife about letting him live with us.  She reluctantly agreed, convinced that a male college student was going to lead to dirty dishes, a late-night television blaring, and a stench emanating from the guestroom.  Mike proved her wrong and was the perfect houseguest.  He helped out around the home unsolicited – including mowing the lawn, leaving me elated that I was absolved of my least favorite weekend task.  We still speak fondly of his summer living with us.

After his two year work tenure, Mike left me quite a void to fill when he graduated Georgetown and moved to New York.   As much as I "gave" Mike his first office job I believe he did more to help me out than vice versa.  Mike's contribution was integral in the success of this firm and I would not have grown to several attorneys over two offices if not for Mike's helping lay a foundation at the outset.  He also set the bar too high – the history of my law firm is now filled with the carcasses of college interns that seemed to have disappointed.   I haven't hired a college student in over 10 years.

The upside of my periodic travel to New York City for the past 20 years has been connecting with Mike for dinner and catching up.  While my relationship with Mike is most notably as his employer, it is Mike's enduring friendship that I feel most privileged and honored to have.  I don't have a younger brother.  If I could pick one, it would be Mike.

While it is unfortunate to have to write this letter, I am proud to stand by Mike's side and do whatever I can to help the court see the Mike Gramins that I know – a remarkable person who I have always seen as having a strong moral character.

Thank you in advance for your time and taking into consideration this letter.  Should you like to discuss this matter with me I may be reached at the address found in the letterhead above, via email at meruddy@icloud.com, or via phone at 301-537-0413.

Regards,

Mark E. Ruddy

**Ex. A-34**

Hon. Robert N. Chatigny

United States District Court

District of Connecticut

Abraham Ribicoff Federal Building

450 Main Street – Room 228

Hartford, Connecticut 06103


Dear Judge Chatigny,

My name is Brendan McNamara and I am writing this letter in support of Mike Gramins. I had the opportunity to work with Mike at Nomura Securities from 2010 until he was let go in late 2014. At Nomura, I worked in the Sales group in the Structured Products department, where Mike was a RMBS trader. For context, I joined my team when I was 23 years old so I was definitely junior to Mike during my time there.

The trading floor environment is a very unique thing. Each sales and trading team have their own hierarchy and their own way of doing things. The RMBS desk, which Mike was a part of, was a very tight knit group and was a group that people wanted to be with and do business with. Mike was senior on that desk and the things that always stuck out to me about Mike were his work ethic and his overall level of caring. Even at his level of seniority, Mike was one of the first people in the office and was one of the last people to leave. He had a unique way of motivating people and getting people to buy into the business that we were all building and creating.   But his level of caring went beyond bonds and he really seemed to find pleasure in helping others. As mentioned, I was a junior salesperson when I joined Nomura. As a junior on the floor, you are thrown into the deep end and it's your job to figure it out. I was constantly running bonds and asking questions and just trying to find ways to add value to my team and my department. One person who has always stuck out as willing to go out of their way to help me is Mike Gramins. As a senior trader, he had no obligation to sit down with me to run bonds after everyone went home, but he genuinely cared about people and our business. He wanted to see me succeed and as a leader, he took it upon himself to help make that happen. And I was not alone, he would take time with anyone who was interested because he wanted everyone to be better.

In closing, Mike Gramins is a good person. He has a big heart and truly cares about others. I am sure that you will receive hundreds of letters with different personal stories but they will all have the same theme as mine because that is who Mike is. I appreciate your time in reading this letter.


Sincerely,

Brendan McNamara

Friday, November 11 2020

Sunday, November 8, 2020

Hon. Robert N. Chatigny
United States District Court
District of Connecticut
Abraham Ribicoff Federal Building
450 Main Street - Room 228
Hartford, Connecticut 06103

Dear Judge Chatigny,

I met Mike Gramins soon after accepting a position on the mortgage trading team at Lehman Brothers in 2007. As the newest member of the team, joining right after graduation from Tuck Business School, I did not know anyone in the group and had only a limited knowledge of the products for which we were responsible. Mike's thoughtfulness and generosity were evident immediately as, more than anyone else, he went out of his way to make himself available to help and teach me about our specialized sector of mortgages. Mike also made sure I was included in after-work social outings and invited me to join his fantasy football team, which we had great fun running together for the next 7 years. To be clear, none of this was Mike's responsibility and he stood to gain nothing except a solid friend, which I hope he feels he has had in me since. I was extremely thankful for Mike's help in bringing me up to speed in a complicated area of finance, but what turned Mike from kind coworker to true friend was that he went out of his way to make me feel welcome in what could have been an intimidating environment. But, that's just the kind of person Mike is. As a matter of fact, he didn't treat me differently than I've seen him treat countless others. In an industry that can be high-stress and competitive, Mike always stood out as one of the down-to-earth, "nice guys" who was loyal to his team, his friends, and his family.

It was also a tremendous pleasure being friends with Mike at the start of his relationship with Natalie. From near the moment they began dating, it was clear, he would forever be devoted to this bright, strong, warm-hearted woman. As much as he wanted to celebrate their relationship, he was sensitive to the fact that they worked in the same industry and that she wanted her reputation at work to include only professional details, not personal ones. As I have

**Ex. A-36**

consistently seen from him, he was careful to always put another person's feelings before his own in their relationship. He was thoughtful and considerate and more than willing to follow Natalie's lead, wanting her to be comfortable with each and every step they took. I have no doubt, this is part of the reason Natalie is as committed to Mike as he is to her and their two amazing children.

Fortunately, when the financial crisis ended our time at Lehman Brothers, it did not break our team apart. Instead our group banded together at Barclays for a year in an integration of trading desks and then broke off from that firm in an attempt to restart the mortgage business at Nomura. We were some of the first few employees to take seats at the new trading desk, and spent the next 5 years encouraging and supporting each other in the effort to build a real business for the company. I felt fortunate that the team of hard-working and loyal people I started with at Lehman largely stuck together to make this possible. The years were turbulent and extremely difficult and it took a lot of grit and unwavering dedication to build to what seemed at times like an unachievable goal; but, Mike never waivered in his positive attitude and upbeat spirit. His commitment to his friends and co-workers was constant as was his commitment to Natalie and the life they were starting together. At no point in the many years I worked with Mike, and in the decade-plus I've considered him a friend, did I ever have a reason to question Mike's loyalty, work ethic, integrity, or kindness.  On the contrary, they were something to aspire to. Mike was a valuable and hard working member of our close-knit team at Lehman, Barclays and Nomura; and he has always been a generous and kind member of his broader community outside of work. These same characteristics make Mike an incredible husband to Natalie, and father to ▉ and ▉▉▉▉▉ - his top priority, as any who know him will attest to.

It has been very difficult to watch my kind and loyal friend of over 13 years struggle to run this gauntlet that has forced him to spend time away from some of his closest friends and the industry he specialized in.  I firmly and whole-heartedly believe Mike is a good person and an outstanding husband and father.  I've not heard Mike express any sympathy for himself in this experience; only for the pain it has and will continue to cause others, especially Natalie, ▉ and ▉▉▉▉▉. It breaks my heart to think that Natalie and the kids could be separated from Mike for any period of time after all they've already been through.  I hope that my inadequate words help you to see how much good there is in Mike. He is the kind of person to not only have learned from this experience but to use the lessons learned to be a positive influence in this world, especially for those of us lucky enough to know him.

Thank you for your kind attention and consideration.

James Whitticom

November 30, 2020

Hon. Robert N. Chatigny
United States District Court
District of Connecticut
Abraham Ribicoff Federal Building
450 Main Street – Room 228
Hartford, CT  06103

Dear Judge Chatigny,

I am writing to attest to the character of Michael Gramins.  I hope that by sharing my experiences with Mike it will shed some light and perspective to the quality person I know Mike to be.  I had the privilege of working with and getting to know Mike during our time together at Nomura Securities.  I joined Nomura in 2010 as a senior sales person.  Prior to my arrival at Nomura, I had never met nor worked with Mike.  What I remember about my first impression of Mike was his professionalism and maturity for a trader of his age.  During a period fraught with uncertainty, distressed assets and stressed individuals, Mike brought a calm, professional demeanor to every interaction, and my customers sought out his insight and opinions.

While Mike and I were a generation apart in age, we bonded over our similar experiences of growing up in large families.  Like myself, I attribute the large family upbringing for framing the manner in which Mike interacted with our colleagues and customers.  Mike was a team player who had an innate ability to identify problems, and then collaborate to work towards a mutually agreeable solution.  These were not zero sum outcomes, but win-win for both sides.  Mike was also very instrumental in recruiting and developing our junior colleagues.  He demonstrated patience and empathy while teaching and mentoring our junior team members on technical and personal skills that were essential to succeeding in our business.

Prior to arriving at Nomura, I had 20 years of experience as a securitized products sales person at two major firms.  What I can attest to unequivocally is that the negotiation tactics that Mike and many others have been accused of using were pervasive across firms in the securitized products business.  I am not condoning this behavior, but simply citing from experience that these tactics were not only commonplace on both sides of the phone, but taught and condoned by firms in the industry.  The Litvak charges served as a wake-up call, and immediate and appropriate changes were implemented at Nomura and other institutions.  But let me be clear, the changes weren't a roadmap of legal and illegal behavior.  There was no list of acceptable or prohibited practices.  It was up to leadership and senior employees to devise, implement and enforce the new best practices.  Mike, as a senior trader, was part of the team at Nomura responsible for the solution and I witnessed Mike's leadership in modeling and enforcing the new rules of the road.

Over the past six years Mike has suffered financial, professional and personal hardship as a result of his behavior.  He has been unable to move ahead in his

professional life as so many others accused of similar behavior have been able to do. I struggle to understand why Mike is being made a scapegoat for the industry.  I respectfully ask that the Court take these factors into consideration when sentencing Mike.

Respectfully,


Michael Murray

Hon. Robert N. Chatigny                                        November 20, 2020
United States District Court
District of Connecticut
Abraham Ribicoff Federal Building
450 Main Street – Room 228
Hartford, Connecticut 06103

Dear Judge Chatigny,

I am a lawyer licensed to practice in the state of New York and am currently working as a Senior
Associate at Bohrer PLLC. I first met Mike Gramins in the summer of 2017, when Mike
interviewed me for a job at the law firm he had recently helped to found. Mike offered me a job
and I have spent the better part of the last three years working with him. Throughout my time
working with Mike I have viewed him as both a mentor and a friend and I have come to rely on
Mike heavily for advice and support, in and out of the office.

Mike served as my firm's COO from the day our doors opened. In addition to making sure the
trains run on time, Mike always brought a steady and calming hand to the workplace. Mike was
always willing and ready to listen to ideas and to provide constructive criticism. Although
Mike recently left the firm, we remain friends and he will continue to be one of my first calls
when I need a helping hand.

Although I met Mike at work, I have come to rely on him outside the office. Mike is always
willing to lend a hand, whether through good times or bad. Mike listened and laughed as I spent
weeks trying to figure out how to propose to my girlfriend and was there again earlier this year
when we had to postpone our wedding as a result of the pandemic. Perhaps unfortunately for
Mike, I cannot think of a situation where I would not call him to ask for his guidance.

I began following Mike's case closely after I started working with him. I was always amazed,
and continue to be amazed, by Mike's ability to remain so level headed throughout the process. I
remember celebrating with Mike and Natalie when the conviction was initially overturned. I
also remember how devastating it was when the conviction was ultimately reinstated. This case
has loomed over Mike for the entire period that I have known him; despite the twists and turns,
Mike has never let the strain show.

Despite following the case, it is still hard to imagine Mike in this position. I have only ever seen
Mike act with the highest integrity. The only time I have (jokingly) questioned Mike's judgment
is when he insists that his beloved Chicago Bears can make the playoffs with Nick Foles at the
helm. Mike is an amazing colleague, father and friend. I imagine this will be one of dozens of
letters in support of Mike and I hope this Court will not deprive us of Mike's presence.

Sincerely,

Jonathan Jason

10/29/20

Hon. Robert N. Chatigny

United States District Court

District of Connecticut

Abraham Ribicoff Federal Building

450 Main Street - Room 228

Hartford, CT

06103


Dear Judge Chatigny,

I'm ███████████, One of Michael Gramins' nieces.

I would like to tell you that Uncle Mike is one of the best Uncles and one of the Uncles that has been there the most for me. Uncle Mike has always been able to make me feel happy and make me laugh. He has supported me in all my interests, has bought my Girl Scout Cookie and tasted my homemade baking. He makes me

**Ex. A-39**

feel welcome in his home and lets me spend time with my cousins. Uncle Mike also made sure I was included in everything I could be.

There are not many words I can find to describe this because whenever I start thinking about this, I can't bring my mind to think about it. I love Uncle Mike so so so so so so so so so so so so so so so so so so so much, and I can't imagine him ever going to jail. I really hope, pray, and wish that it won't happen.

Sincerely and with respect,

████████████

████████████████

10 Years Old.

October 18, 2020

Hon. Robert N. Chatigny
United States District Court
District of Connecticut
Abraham Ribicoff Federal Building
450 Main Street - Room 228
Hartford, Connecticut 06103

Dear Judge Chatigny:

Uncle Mike, without fail, shows up on December 23 in Deerfield, IL with the spritz cookie maker in hand,
dozens of Hershey kisses for unwrapping, and an enthusiasm for tradition to host the cousin Christmas cookie
baking.  As Uncle Mike's oldest niece, I've participated in this joyful afternoon for about 15 of the past 23 years
and will always get too invested in competing on whose pan has the least sprinkles not on the cookie, which
cousin can unwrap the most kisses, and of course who can eat more cookies than Nana will allow.  Being the
youngest of 7 kids, Uncle Mike has always been the fun Uncle to his nieces and nephews.  I fondly recall Uncle
Mike excitedly joining for a game of tag, teaching me how to run the model train, and providing guidance
when I decided to pursue a Jesuit education and career in business.

Uncle Mike graduated from Georgetown University in 2004 and I graduated from Marquette University in
2018.  Both schools, founded in Jesuit values, emphasize the idea of being men and women for and with
others.  When I contemplated a major in Accounting versus Actuarial Science, Uncle Mike helped me connect
with his colleagues in both fields with the intention of educating me on both rather than influencing towards
one.  His care for my decision was evident as we sat down together to draft thank you letters for those who
offered advice and research further on industries that piqued my interest.  This summer I visited the Gramins
family at their home in North Carolina and witnessed how genuinely Uncle Mike cares about his wife, son and
daughter - listening to his kids' incredible knowledge of shark facts, venturing outside to launch the stomp
rocket, and taking time at family dinner to teach new words or hear about that day's virtual camp game.  Uncle
Mike is a nurturer to his entire family, near and far, and his intention to be for others is tangible in all
relationships he builds.

While Uncle Mike and I may sit in different fan sections at the Big East tournament and live halfway across
the country from one another, I have never felt distant from Uncle Mike.  He is intentional and present, cares
for those he loves, and brightens a room with his enthusiasm.  Especially his enthusiasm for the perfectly
sprinkled spritz Christmas cookie.

Sincerely,

Kaitlin Gramins

Ex. A-40

Honorable Robert N. Chatigny                                      30 October 2020
United States District Court
District of Connecticut
Abraham Ribicoff Federal Building
450 Main Street – room 228
Hartford, Connecticut 06103


Dear Judge Chatigny,


My name is Patrick Anderson and I wish to introduce myself to you, and to provide you with my personal observations of Michael Gramins' character.

After graduation from college, 1971, I entered active military duty as an infantry officer.  Over that career I had command responsibility for Ranger and Special forces units.   After leaving military service I completed a thirty-six-year career in law enforcement, including sixteen years as a Chief of Police in a suburb of Chicago.

I was first introduced to Mike Gramins by my six- year- old son and his younger twin brothers. The boys told me and their Mother that they no longer wanted girl babysitters, they wanted a baby sitter who would continue to read them stories but who would also play sports with them. My wife and I asked them if they had someone in mind and they told us about this really smart and nice older boy from school that they really liked, that young man was Michael Gramins. When asked, Mike shared that he was excited about the new responsibility and prepared himself by attending a baby - sitting clinic offered by the Park District and Police Department.

As the football coach for the Holy Cross School fifth and sixth grade team my personal goal was to find ways to introduce young men to the military concept of, "Band of Brothers," and all that concept of service embodied.  To reach that goal it was important to find team leaders who naturally exhibited that ethos.  Over the years Mr. and Mrs. Gramins had held their older boys out of football for fear of injury.  At the start of Michaels's sixth grade year I was in trouble, that year's team was without a principled leader.  I remember visiting with Michael's parents and asking that they allow Michael to play, I explained that his natural leadership at school and his other oriented personality would help me build a team with the right character.  They allowed Michael to play and I and a group of young parents watched their young sons become a "team of brothers."

I watched Mike grow up with my own children and admired how he was raised by his parents and by his older siblings who would eventually become an accomplished Naval Officer, a law enforcement executive, a teacher, and civic leaders.

**Ex. A-41**

As the years past, I followed Michael's school and life experiences and enjoyed our periodic conversations; I continued to be proud of Michael's dedication to faith and family.

As a former police chief, I understand  the dynamics of a courtroom and the difficult task of assigning an appropriate sentence.  Having known Michael for these many years I am confident that neither greed nor pride influenced his work decisions and that the intended consequence of those decisions was honorable.

Your Honor, I would humbly suggest to you that any sentence that included incarceration would be an irreplaceable loss to his family, his community, and the underprivileged citizens he has assisted and continues to assist.  I believe that Michael Gramins can best serve his sentence by contributing to the betterment of the community, a commitment he has demonstrated over his life.


Sincerely,

Patrick Anderson

Deerfield, Illinois

October 24, 2020

To:

Hon. Robert N. Chatigny
United States District Court
District of Connecticut
Abraham Ribicoff Federal Building
450 Main Street - Room 228
Hartford, Connecticut 06103

Dear Judge Chatigny,

By way of introduction, my name is Travis Skelly. I have known Mike Gramins for the last 20 years. I consider Mike to be one of my closest friends.

As background, I am a partner in a venture capital fund specializing in evaluating and investing in technology companies. In this capacity, I have had the privilege of meeting leaders from all walks of life and had to evaluate the character of literally hundreds of business founders and CEOs. I believe that this experience coupled with my own personal history with Mike enables me to describe more objectively my views of the man. Hopefully, you will find this letter worthy of your consideration.

I have known Mike since we were teenagers. We both grew up in the suburbs of Chicago where we were competitors on the lacrosse field. We were then classmates at Georgetown University. After graduation, we were roommates for six years in New York. Mike served as a groomsman at my wedding and I became a Godparent to his daughter. During this lifelong friendship, I have come to know Mike's parents, brothers, sisters, wife, and children incredibly well. Through this letter, I want to communicate as succinctly as possible the respect and admiration that I have for Mike as a person.

Mike is the definition of a "self-made man." He comes from a large family which is a source of strength for him, but he certainly did not get any special treatment as the youngest of seven. He worked throughout high school in a variety of jobs. At Georgetown, he again worked to help offset school expenses. Academically, he was a "grinder" who succeeded through hard work and discipline. Mike Gramins is not a person that takes shortcuts nor takes the easy way out. I have admired and respected these traits from the time I first met him.

All of Mike's hard work paid off as he graduated at the top of the class at Georgetown and was hired by Lehman Brothers. On Wall Street he continued to excel becoming one of the top traders after only a few years on the job. During his successful career, he has served as a mentor to both his peers as well as many young aspiring graduates wanting to work on Wall Street. As for myself, Mike helped me get a job after graduate school and coached me as I dealt with challenges in my own career.

Mike's penchant for hard work, and his willingness to be a mentor to those coming up behind him are admirable qualities. However, what most informs my views of Mike are his steadfast loyalty and true kindness. I can best describe what I mean by sharing my own history as an example. In 2007, I was diagnosed with ████████████████████████. As you can imagine, being diagnosed ████████████████████ was not easy. █ ████████. During that time, Mike was there at every turn and there were many turns that were difficult indeed. I relied on Make and my family to get me through this exceedingly difficult time in my life. Mike also rallied our friends to send care packages and make hospital visits. He even helped pay my rent. After I ███ ████, Mike was instrumental in helping me find my way back into the workforce. I will forever be thankful for Mike's loyalty and generosity during this difficult period of my life. He went above and beyond to make sure that I was going get through it. This is who Mike is, he is always there when you need him.

Another example of Mike's strength of character is his devotion to his family. As an expecting first-time father myself, Mike and Natalie have also become my mentors in preparing for a very new experience. I routinely seek out their advice and guidance because I am so impressed with the type of parents they have become, raising two great children (██ and ███████████). I was so honored when Mike and Natalie asked me to be the Godparent to their daughter and I hope that I can be as good of a mentor to ██████████ as Mike has been to me.

The past five years have been incredibly challenging for Mike and his family. I am deeply saddened that we have come to this unfortunate position in Mike's lengthy legal battle. While I respect the legal process and the decision of the jury, I believe the hardship that Mike and his family have experienced during this prolonged process has been more than sufficient punishment. I hope that in this brief description of my experiences with Mike, I was able to sufficiently describe an honorable, principled and loving man that is worthy of your consideration for minimizing any additional punishment for himself and his family.

I am incredibly fortunate to call Mike a very close friend and I respectfully ask that you consider my views of Mike as you make your decision.


Sincerely,

Travis J. Skelly

October 30, 2020

To:
Hon. Robert N. Chatigny
United States District Court
District of Connecticut
Abraham Ribicoff Federal Building
450 Main Street - Room 228
Hartford, Connecticut 06103

Dear Judge Chatigny,

I hope this finds you well.  My name is Marian Skelly, and I am writing you today in support of Michael (Mike) Gramins.  I have known Mike and his family for five years and consider myself very fortunate to have such wonderful, thoughtful, and generous people in my life.

I met Mike and his wife Natalie through my husband Travis Skelly.  From the first day I met the Gramins family, they have gone above and beyond to make me feel welcome and a part of their family.  Their generosity and guidance have been unwavering and something I am thankful for daily.

I am so grateful to Mike and his family for being such a constant source of stability, support, generosity, and guidance.  They have played an important part in some of the most significant events in my life including my engagement to Travis; as a groomsman at my wedding; as a mentor in my career – navigating job transitions, challenging bosses, and promotions; allowing me to become a godparent to their daughter ███████; and most recently, with their incredible support through my first pregnancy – giving advice, hand-me-down baby essentials, and allowing us to stay at their home when we didn't have a place to stay during COVID.  Helping others selflessly comes naturally to Mike and his family.

I have watched Mike and Natalie navigate through this trial with grace and strength as they do in all aspects of their lives.  The way in which the Gramins family lead their life – personally, professionally, and as parents – is truly admirable and I can only hope to follow in their footsteps.

I am sending you this letter requesting leniency on behalf of Mike.  While I respect the legal process, I am greatly saddened by the outcome of this trial.  I believe that Mike and his family have already endured significant punishment throughout this process, and I hope you will take this into consideration when determining his sentencing.  Mike is a rock for his family, friends, and community and it would be extremely detrimental to all of us if Mike were absent from our daily lives.

Sincerely,
Marian Skelly

Ex. A-43

November 21, 2020

Hon. Robert N. Chatigny
United States District Court
District of Connecticut
Abraham Ribicoff Federal Building
450 Main Street - Room 228
Hartford, Connecticut  06103

Dear Judge Chatigny:

My name is Timothy Taylor and Mike Gramins has been a great friend of mine for over 15 years. While Mike and I grew up 10 minutes from each other outside of Chicago, we went to different high schools and didn't meet until our college years when Mike was in Washington, DC and I was close by in Virginia. We both moved to New York after college and were roommates in the city for nearly 5 years where we grew to become great friends. I have worked in the finance industry for 15 years, initially in investment banking before moving to my current position in private equity where I serve as a partner for an investment fund focused on telecommunications, energy and real estate investing.

Living with someone during such formative years, I believe I was able to develop a unique perspective into Mike's character and was able to see him across roles as a friend, dedicated worker and loving partner to his wife Natalie. Of our friends, with plenty of quality competition, Mike was without question the most consistently responsible and hard working. Mike is, simply put, likely my most intelligent friend. I have sat first chair at the rise and fall of Mike Gramins and have been witness to great moments while also close by during his most challenging years.

Throughout the 2007/2008 financial crisis, I was quite lucky to have Mike's insights into the mortgage markets which helped to provide me with a better understanding of the structural underpinnings of what was to come and why. I was always incredibly impressed by Mike's ability to remain calm and thoughtful during a period of time when his firm was imploding, his life upended and his personal financial situation so materially impacted. This event was directly devastating to Mike's life but he remained patient and unflappable; characteristics that would prove to be quite valuable when he faced his next personal test years later with his prosecution.

During this time, while the macro world was imploding, our home faced an even more consequential test when our third roommate, Travis, was ████████████████████. Going back to that first night before the diagnosis, Mike and I found Travis very pale and unable to leave the couch. Mike took charge of the situation and forced us all to go to the hospital, against the initial wishes of Travis and certainly against my advice. At the time, I was quite cavalier about the situation and didn't realize what we were facing but Mike was accurately alarmed. He forced us all into a taxi to head to the emergency room and encouraged me to stay with him in the waiting room through the diagnostic testing and remain until we had a handle on the situation. While I wanted to go home as I thought we weren't able to be of any use, Mike convinced me of the importance of our mere presence and that Travis would be comforted to know that at least that his friends were nearby. Well after midnight when testing was complete, we were told to go home by the doctors while our friend had to endure the discomforts of the hospital – no music, no television, an uncomfortable bed with wires inserted throughout both arms and a long wait ahead. This was prior to the unlimited access to entertainment that one has today in their palm, and Travis was understandably unable to maintain any semblance of

peace or calm. Knowing this, when we got home, Mike downloaded peaceful music to his iPod and although it was 3 or 4am, he went back to the hospital by himself that night to give Travis the device, providing at least an avenue for Travis to feel normalcy before the results. While the next morning provided near worst-case news, Mike took time off of work amidst the macro chaos in order to be there for our friend and provided comfort above and beyond the call of duty. Mike remained totally dedicated to Travis's successful recovery for the whole of the next year and has remained a most compassionate friend.

Over the following years, I saw Mike continue to build his impressive career and settle down to begin building a family. When I initially heard the news regarding his prosecution, I was quite shocked to read that his actions could be considered criminal. While I do not work in the RMBS market, I do deal with advisers, brokers and counterparties in financial transactions. After years of following Mike's situation, I remain shocked that a person can be picked out of the massive crowd and held to such a strict, idealistic standard. It's very difficult for me to distinguish between Mike's actions and those of professionals who operate throughout the financial world.

In considering the appropriate sentencing, I trust that the court will take into account the great toll already delivered to Mike's life from this case. Mike has lost his career, his financial stability, has gone through a very public embarrassment and was forced to leave the life he loved in New York. Mike is husband to a loving wife and father to two children, ██ and ██████, all of whom depend on him in every form and need his presence. In light of the massive personal and financial costs to Mike, I ask Your Honor to consider probation knowing how devastating any incarceration would be in this case.


Sincerely,

*Timothy E. Taylor*

Timothy E. Taylor

Hon. Robert N. Chatigny
United States District Court
District of Connecticut
Abraham Ribicoff Federal Building
450 Main Street - Room 228
Hartford, Connecticut 06103

November 1, 2020

Dear Judge Chatigny,

My name is Adam McBride, and I am writing on behalf of my close friend Michael Gramins in advance of his sentencing hearing scheduled for December 17th.

I was present in the courtroom for the closing arguments during Mike's trial and have thought about the contrasting views the two sides presented. The contention that Mike knew the law, knew he was breaking it, and went ahead eagerly is not consistent with the person I know. Marc's statement was more aligned with my feelings – Mike lives by a code. As in all parts of his life, he was passionate about his career, and I do not believe that he would have intentionally jeopardized it. In considering your judgment, I hope to provide a little more context about my friend having witnessed his trajectory over the past 20 years.

Mike and I were fast friends when we met the first few days of freshman year at Georgetown. Energetic, friendly, and sharp, he was eager to embrace all the opportunities that college provided. One of the things I respect most about Mike is his unwavering optimism – when we have had our disagreements, Mike has never been petty. I also respected that Mike was on financial aid, and as an only child from the DC area, my family was happy to host him for many Thanksgivings and Easter holidays during our four years. We lived together sophomore year and again in the summer between junior and senior year interning in New York.

Sharing a room as sophomores was not always easy – his OCD nature did not mix well with my more cluttered approach. Mike was the only suitemate who used an iron or color-coded clothing drawers. His constant multi-tasking and activity in the apartment were not always appreciated by movie-watching roommates. And occasionally, he would pull all-nighters in our room writing 15-page assignments from scratch. In his spare time, Mike played club lacrosse, took care of the school mascot, Jack the Bulldog, and forged meaningful relationships with Jesuits and teachers. He also loved planning parties and creating environments where everyone felt included and had a great time. Even with a zeal for partying, Mike never experimented with recreational drugs or smoked. His discipline and ability to see the big picture was noticeable among other highly motivated students.

In New York, Mike and I had earned fixed income sale & trading internships at Goldman and Lehman Brothers. I was a finance major in school fresh from reading *Liar's Poker* and thought I knew it all. Perhaps, unsurprisingly, I did not receive a full-time job offer, but I learned a lot about the dynamics of the trading floor. Mike aced his summer and had the two top departments at Lehman fighting over him. Being a government major, Mike strongly considered pursuing law school, but was ultimately drawn by full contact nature of trading – a helmet sports guy, he had been a two-sport varsity captain in football and lacrosse.

**Ex. A-45**

After Georgetown, I moved to New York in 2004 and started my career in wealth management. Having a less certain path, I explored many areas to focus my career and bolstered my resume by passing the CFA exams. Meanwhile, Mike's trajectory was enviable. Shepherded by the same bosses, his team survived the bankruptcy of Lehman and was purchased by Nomura after a brief interlude at Barclays. His work ethic, abilities as a trader and loyalty to his colleagues helped him develop a reputation as a rising star. Critically, Mike knew when to follow and when to lead.

As the years went by, our friendship remained strong. We co-organized summer beach houses, attended sporting events, concerts, charity galas, and eventually, over a dozen weddings. Just before the summer of 2007, I remember meeting Natalie. She is a great partner to Mike – a charming Southern belle – quick-witted and formidable. They had shared values and priorities – ambitious, hard driving, but never to the detriment of family and friends. They have a passion for community building – even when initially commingling their two groups of friends felt like an awkward middle school dance.  Being a bit older, Natalie was protective of Mike and kept him on the straight path. While he reveled in hard fought independence, Mike knew that she had his number.

I met my wife Sally in 2010 and life sped up. Like Mike, I married outside the Georgetown circle opting for an artist from Brown. Mike and Natalie got married on one of the hottest days in memory in Charlotte. Being the youngest of 7, Mike is an uncle many times over – and one of the things that Sally appreciated the most was that Mike and Natalie seeded the spotlight for 20 minutes so all Mike's nieces could perform a song and dance they had prepared for the wedding. While most of the guests were family and friends, I briefly met some of Mike's junior colleagues and was struck by their obvious revere for him. About a year later, Mike was a groomsman in my wedding. While his poker face, carefulness and even temperament made him a successful trader, he is a sucker for sentimentality and tradition. My rehearsal dinner stands out as one of those days where he was at his best – forgiving some of the cheesy trader lingo he employed in his speech.

 Close to Thanksgiving 2014, Mike asked me to grab a drink at a bar near my apartment. We had not seen a lot of each other because I had had a busy year. After almost six years of commuting to Stamford, CT, I had been hired by another fund of hedge funds in New York. Simultaneously, my wife had received a promotion at the Metropolitan Museum, and we were gut renovating our apartment. The day Mike was escorted off the desk, a mutual friend had sent me the Bloomberg alert. I remember being shocked – I thought his newly minted Series 24 would insulate him from some of the day-to-day volatility in his market. As we drank, Mike was visibly shaken and embarrassed, but did not let on to any legal liability he saw on the horizon. The conversation was more about squaring our relationship and pitching me the investment strategy he planned to launch. Mike enjoyed some time off – the bomb did not drop until the following year when he was indicted.

Mike approached his criminal trial the same way he has every other endeavor in his life – fully committed. There was a thought process to selecting the right attorney and law firm, and once selected, rather than sit back, Mike decided to become the most valuable player on his own legal team.  Remarkably, Mike never seemed to take the charges against him personally. His fight to prove his innocence and preserve his freedom were grounded in faith. In the face of immense pressure, he persevered and never let his predicament serve as an excuse – forever reinforcing my support and admiration.

In September 2017, Mike got me a job working for a law firm where he was working as a consultant. Six months earlier, I had lost my job in a leadership change. On top of a difficult job market, my wife was pregnant with our second child. While the work was temporary, it was critical to easing my transition, providing some income and a better platform from which to look for new roles. In addition, it eased some of my wife's concerns about our finances. While I was qualified for the project – winding down a hedge fund – Mike put himself out for me and was encouraging and helpful as I looked for permanent roles.

My objective is not to challenge the court's decision – it is to provide you with my insights and opinions on who Mike is and why his defense was consistent with his character. In pursuit of that goal, I hope that you will consider my point of view when determining your judgment at sentencing. Thank you for your consideration – I have included my contact information in case you would like to discuss.

All the best,

Adam McBride

Email: adam.g.mcbride@gmail.com

Ex. A-45

Our children through the years



**Ex. A-46**